1

2

3

4

5

6

7    UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9    JOHN GARRETT SMITH,

10                        Petitioner,          CASE NO. 3:17-CV-06019-BHS-DWC

11           v.                                REPORT AND RECOMMENDATION

12    RONALD HAYNES,                           Noting Date: June 22, 2018

13                        Respondent.

14           The District Court has referred this action to United States Magistrate Judge David W.

15    Christel. Petitioner John Garrett Smith filed his federal habeas Petition on December 6, 2017,

16    pursuant to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentence. *See*

17    Dkt. 1, 3. The Court concludes Petitioner failed to properly exhaust his state court remedies as to

18    all grounds raised in the Petition; however, a state remedy remains available to Petitioner.

19    Therefore, the Court recommends the Petition be dismissed without prejudice.

20    **I.      Background**

21           A.  Factual Background

22           The Supreme Court of the State of Washington ("state supreme court") summarized the

23    facts of Petitioner's case as follows:

24

John Garrett Smith and Sheryl Smith were married in 2011. On the evening of June 2, 2013, the Smiths engaged in an argument at their home that turned violent. Mr. Smith punched and strangled Mrs. Smith to the point of unconsciousness and then left their home. When Mrs. Smith regained consciousness, her eyes were black and swollen shut, her face was swollen and bleeding, and she had difficulty breathing. Mrs. Smith was hospitalized for several days due to the severity of her injuries, which included a facial fracture and a concussion. For months after the assault, she suffered severe head pain, double vision, nausea, and vertigo.

Mrs. Smith's memory of the attack at the time of trial was limited; she recalled:

> I'm being strangled. Garrett's on top of me. My face is being punched. I feel like I'm in a very dark place inside of my head, and three punches, and I'm being called a fat bitch, and I thought I was going to die.

Other evidence filled in Mrs. Smith's memory gaps, including her written statement, which was read into the record. Additionally, there was a recording made of the incident. During the incident, Mr. Smith used the home's landline cordless phone to dial his cell phone in an attempt to locate the cell phone. The cell phone's voice mail system recorded the incident because Mr. Smith left the landline open during his attempt to find his cell phone. This voice mail contained sounds of a woman screaming, a male claiming the woman brought the assault on herself, more screams from the female, name calling by the male, and the following exchange:

> MALE: There, are you happy now?

> (Woman screaming.)

> MALE: You brought this shit on. I have never done this. You and your fucking Mexican. Fuckcocking three-timer. You're not going to get your (inaudible) three check.

> ....

> WOMAN: Get away.

> MALE: No way. I will kill you.

> WOMAN: I know.

> [More female screaming and name calling by the male followed until the recording ended.]

1
2
3
4

At trial, the female in the recording was identified as Sheryl Smith and the male as the defendant, John Garrett Smith. Mr. Smith fled the scene without his cell phone after strangling Mrs. Smith to unconsciousness. The cell phone ended up in the possession of Skylar Williams, Mrs. Smith's daughter and Mr. Smith's stepdaughter, after Ms. Williams returned to the house and helped her mother complete a 911 call.

5
6
7
8

On the 911 call, Mrs. Smith can be heard gasping and pleading for help. She reported being unable to see. Mrs. Smith explained to the 911 operator that she had been "beat to a pulp" by John Garrett Smith. Ms. Williams, who had just arrived home, then grabbed the phone and told the 911 operator that her mother's face is "like ten times the size of normal and gushing blood" and that "she can't open her eyes because her face is so swollen." Following the arrival of the police and paramedics, Mrs. Smith received medical care and was transferred to a hospital.

9
10
11
12

While at the hospital, Ms. Williams looked at Mr. Smith's cell phone and saw a missed call and a voice mail from the family landline left around the time of the incident. She listened to the voice mail and then played it for an officer. The police, after hearing the voice mail, seized the cell phone and executed a search warrant on it. While at the hospital, Ms. Williams received multiple calls from Mr. Smith. During one of those calls, Mr. Smith indicated that he thought he should book a flight and leave town. Ms. Williams told him to meet her at the house instead, but her plan was to send the police to meet Mr. Smith.

13
14
15

The police arrested Mr. Smith at the home. At that time, he denied any physical altercation with Mrs. Smith. But the next morning, Mr. Smith asked a detective, "Is she going to make it?" despite not receiving any information from the detective about Mrs. Smith's injuries.

16
17
18
19
20
21
22

The State charged Mr. Smith with attempted first degree murder, attempted second degree murder, first degree assault, and second degree assault for the incident occurring with Mrs. Smith on June 2, 2013. Prior to trial, Mr. Smith filed a motion to suppress the audio recording found on his cell phone that captured part of the incident, including him threatening to kill his wife. Mr. Smith argued that Ms. Williams had unlawfully intercepted the recording pursuant to the privacy act, RCW 9.73.030, when she listened to the voice message left on his phone. The trial court denied the motion to suppress, ruling that Ms. Williams's conduct did not constitute an interception. The court also ruled that RCW 9.73.030(1)(b), which, as discussed below, prohibits the recording of private conversations without consent, did not apply because the information was inadvertently recorded, noting that "[a]t the time this information was recorded, nobody was trying to intercept or record what was occurring."

23
24

The case proceeded to a bench trial. The trial court found Mr. Smith guilty of attempted second degree murder, second degree assault, and the related special

REPORT AND RECOMMENDATION - 3

1
2

allegations of domestic violence, but acquitted him of the remaining counts and the aggravator. Mr. Smith was sentenced to a standard range sentence of 144 months.

3    *State v. Smith*, 189 Wash. 2d 655, 657–60 (2017); Dkt. 45, Ex. 33, pp. 1-5 (citations omitted,

4    footnotes omitted).

5        B. Procedural Background

6            1. *Direct Appeal*

7        Petitioner challenged his Clark County Superior Court convictions and sentence on direct

8    appeal, raising six grounds for relief. Dkt. 45, Ex. 9. Petitioner filed a *pro se* statement of

9    additional grounds, raising seven additional grounds for relief. *Id*. at Ex. 10. The Court of

10   Appeals of the State of Washington ("state court of appeals") affirmed Petitioner's second

11   degree assault conviction and reversed and remanded Petitioner's second degree attempted

12   murder conviction. *Id*. at Ex. 13. The State filed a petition for discretionary review with the state

13   supreme court. *Id*. at Ex. 14. The state supreme court granted review and, on November 22,

14   2017, the state supreme court reversed the state court of appeals decision reversing and

15   remanding Petitioner's second degree attempted murder conviction and reinstated Petitioner's

16   conviction for attempted second degree murder. *Id*. at Ex. 33. The state supreme court issued its

17   mandate on January 18, 2018. *Id*. at Ex. 36.

18           2. *State Collateral Proceedings*

19       Petitioner also filed two actions in the state courts seeking collateral relief. *See* Dkt. 45,

20   Exs. 37, 43. On November 30, 2015, Petitioner filed a motion for relief from judgment in the

21   Clark County Superior Court. *Id*. at Ex. 37. The motion was transferred to the state court of

22   appeals to be considered as a personal restraint petition ("PRP"). *Id*. at Ex. 39. The state court of

23   appeals accepted the transfer and directed Petitioner to pay the filing fee or provide a statement

24

1  demonstrating his inability to pay the filing fee. *Id.* at Ex. 40. The PRP was dismissed on

2  February 19, 2016 for want of prosecution because Petitioner did not respond to the state court of

3  appeals' letter. *Id.* at Ex. 41.

4          Petitioner filed a petition for writ of habeas corpus with the Grays Harbor Superior Court

5  on June 15, 2017. Dkt. 45, Ex. 43. The petition was transferred to the state court of appeals to be

6  considered as a PRP. *Id.* at Ex. 44. The state court of appeals again accepted the petition as a

7  PRP and directed Petitioner to pay the filing fee or provide a statement demonstrating his

8  inability to pay the filing fee. *Id.* at Ex. 45. The petition was dismissed on September 13, 2017

9  for want of prosecution because Petitioner did not respond to the state court of appeals' letter. *Id.*

10  at Ex. 48.

11          3.  *Federal Petition*

12          On December 6, 2017, Petitioner filed his Petition (Dkt. 3) raising the following four

13  grounds:

14          1.  Petitioner's conviction was obtained through the admission of manufactured
                audio evidence and false medical claims.
15          2.  The search warrants obtained in Petitioner's case were based on fraudulent
                information and therefore invalid.
16          3.  The Clark County police officers stole an electronic device that was the property
                of a corporation registered in another state in violation of 18 U.S.C. § 1030.
17          4.  The charging documents in Petitioner's case were not signed by a magistrate and
                therefore no court in Washington has jurisdiction over Petitioner.
18

19          Respondent filed an Answer on February 14, 2018, which was served on Petitioner. Dkt.

20  42. In the Answer, Respondent asserts Petitioner failed to exhaust all the grounds raised in the

21  Petition and requests the Petition be dismissed without prejudice. *Id.* On February 20, 2018,

22  Petitioner filed a Response to the Answer. *See* Dkt. 46, pp. 29-48. The Court ordered Respondent

23  to file a supplemental record because Petitioner asserted there were documents missing from the

24  record which would prove he exhausted the state court remedies. Dkt. 55. On March 26, 2018,

1   Respondent filed the supplemental record. Dkt. 59, 60. Petitioner filed a response to the

2   supplemental record on April 2, 2018. Dkt. 61.

3   **II.     Evidentiary Hearing**

4   The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro*

5   *v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

6   could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

7   the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under

8   28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v.*

9   *Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle

10  Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes

11  the applicant's factual allegations or otherwise precludes habeas relief, a district court is not

12  required to hold an evidentiary hearing." *Id.*; *see Cullen*, 131 S.Ct. 1388. The Court finds it is not

13  necessary to hold an evidentiary hearing in this case because Petitioner's claims may be resolved

14  on the existing state court record.

15  **III.    Discussion**

16  Respondent asserts Petitioner failed to exhaust his state remedies and thus his Petition

17  should be dismissed. Dkt. 42.

18  A. *Legal Standard*

19  "[A] state prisoner must normally exhaust available state judicial remedies before a federal

20  court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971).

21  Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a

22  meaningful opportunity to consider allegations of legal error without interference from the federal

23  judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state

24

1    courts one full opportunity to resolve any constitutional issues by invoking one complete round of

2    the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

3        A federal habeas petitioner must provide the state courts with a fair opportunity to correct

4    alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v.*

5    *Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state

6    Supreme Court even though the state court did not reach the argument on the merits). A federal

7    claim is "fairly and fully" presented to the state courts if the claim is presented "(1) to the proper

8    forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for

9    the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations

10   omitted).

11       It is not enough if all the facts necessary to support the federal claim were before the state

12   courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing

13   *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include

14   reference to a specific federal constitutional guarantee, as well as a statement of the facts

15   entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay*,

16   403 F.3d at 668. Petitioner bears the burden of proving he has exhausted available state

17   remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See*

18   *Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

19       B.  *Analysis*

20       In the Petition, Petitioner asserts (1) his conviction was obtained through the admission of

21   manufactured audio evidence and false medical claims; (2) the search warrants obtained in his

22   case were based on fraudulent information; (3) the Clark County police officers stole an

23   electronic device that was the property of a corporation registered in another state in violation of

24

REPORT AND RECOMMENDATION - 7

18 U.S.C. § 1030; and (4) the charging documents in his case were not signed by a magistrate and therefore no court in Washington has jurisdiction over Petitioner. Dkt. 3.

On direct appeal, Petitioner did not properly raise the four grounds for relief raised in the Petition to the highest state court. *See* Dkt. 45, Exs. 9, 10. Rather, on direct appeal, Petitioner's counsel alleged the trial court erred by (1) failing to suppress evidence obtained from Petitioner's phone; (2) incorrectly applying R.C.W. 9.73.030 in various ways; and (3) concluding that information gathered from Petitioner's phone was gathered legally. *Id*. at Ex. 9. Petitioner also filed a statement of additional grounds on direct appeal, alleging: (1) the trial court rulings were contrary to evidence; (2) exculpatory evidence was withheld and replaced by perjury; (3) forty-nine counts of impeachable perjury were disregarded; (4) discretion was abused towards Asperger's Syndrome; (5) deceptive, malicious slander was used; (6) the trial court failed to disclose prior bias; and (7) key evidence was obtained illegally. *Id*. at Ex. 10.

Petitioner did not move for discretionary review with the state supreme court, but filed briefing in response to the State's motion for discretionary review. *See* Dkt. 45, Ex. 19. In his briefing, Petitioner discussed issues surrounding whether the communications recorded on Petitioner's cell phone were private conversations and raised issues of fraud. *Id*. Petitioner also filed three additional motions alleging the voicemail recording was fraudulent, faked, digitally synthesized, and/or manufactured. *See id*. at Exs. 18, 33; Dkt. 60, Exs. 51, 52. In a footnote, the state supreme court denied the additional motions noting the three motions relied on evidence outside the record. Dkt. 45, Ex. 33, n. 7. The state supreme court informed Petitioner that the appropriate avenue for such arguments is a PRP. *Id*.

In addition to his direct appeal, Petitioner filed two state collateral proceedings. *See* Dkt. 45, Exs. 37, 43. Petitioner's two state collateral proceedings were dismissed by the state court of

1    appeals because Petitioner did not pay the filing fee or submit a statement demonstrating he

2    could not afford the filing fee. *See Id.* at Exs. 37, 41, 43, 48. Any issues raised in these

3    proceedings were not properly raised at any level of the state courts. Therefore, any grounds

4    raised in the two state collateral proceedings were not fully and fairly presented to the state

5    courts.

6         Petitioner argues there are no state remedies available to him. *See* Dkt. 3, 18, 24, 29, 46.

7    The Court may consider an unexhausted federal habeas petition if it appears "there is an absence of

8    available State corrective process . . . or circumstances exist which render such process ineffective

9    to protect the rights of the applicant." 28 U.S.C. 2254(b)(1)(B). Here, Petitioner has not shown

10   there is an absence of available state corrective processes or that circumstances exist rendering any

11   state process ineffective. Rather, Petitioner merely appears dissatisfied with both state and federal

12   court processes. Accordingly, the Court finds Petitioner has not shown there are no state court

13   remedies available to him.

14        After review of the state court record, the Court finds Petitioner did not raise properly raise

15   the grounds alleged in his Petition at each level of his direct appeal or in a collateral proceeding.

16   *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary

17   'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court

18   (including a state supreme court with powers of discretionary review), thereby alerting that court

19   to the federal nature of the claim."); *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1349 (9th Cir.

20   1984) ("The exhaustion of state remedies doctrine limits the issues a habeas corpus petitioner may

21   raise in federal court to the 'same claims' that are 'fairly' presented to the highest state court.").

22   Therefore, Petitioner did not give the state court a full and fair opportunity to determine if federal

23   constitutional violations occurred in this case. Accordingly, the Petition – Grounds 1-4 – is

24   unexhausted.

C. *Available State Remedies*

Respondent maintains there is a state remedy available and, thus, the Petition should be dismissed without prejudice. Dkt. 42. If there is a state remedy available, Petitioner will need to return to the state level to exhaust his claims. *See Johnson v. Lewis*, 929 F.2d 460, 464 (9th Cir. 1991). "The appropriate time to assess whether a prisoner has exhausted his state remedies is when the federal habeas petition is filed, not when it comes on for a hearing in the district court or court of appeals." *Brown v. Maass*, 11 F.3d 914, 915 (9th Cir. 1993).

Here, Petitioner has an available state remedy. Washington State imposes a one-year statute of limitations on the filing of a personal restraint petition or other post-conviction challenge. RCW § 10.73.090. On January 18, 2018, the state supreme court issued a mandate finalizing Petitioner's direct appeal. Dkt. 45, Ex. 36. Petitioner has one year from the issuance of the mandate, or until January 18, 2019, to file a petition or motion for post-conviction relief. *See* RCW 10.73.090(1), (2), (3)(b). At this time, Petitioner still has approximately seven months seek post-conviction relief with the state courts.

Petitioner failed to properly exhaust his state remedies and state remedies remain available to him. Accordingly, the undersigned recommends the Petition be dismissed without prejudice. *See Hill v. Hill*, 2001 WL 34727917 (D. Or. June 29, 2001).

**IV.    Certificate of Appealability**

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists

1  could conclude the issues presented are adequate to deserve encouragement to proceed further."

2  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

3  (2000)).

4        No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

5  would conclude the issues presented in the Petition should proceed further. Therefore, the Court

6  concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

7  **V.        Conclusion**

8        For the above stated reasons, the Court finds the Petition is unexhausted. As there is an

9  available state remedy, the Court recommends the Petition be dismissed without prejudice. No

10  evidentiary hearing is necessary and a certificate of appealability should be denied.

11        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen

12  (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure

13  to file objections will result in a waiver of those objections for purposes of de novo review by the

14  district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R.

15  Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 22, 2018, as noted in

16  the caption.

17        Dated this 6th day of June, 2018.

18

19        _____
          David W. Christel
20        United States Magistrate Judge

21

22

23

24

REPORT AND RECOMMENDATION - 11